NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**M.E.S., INC.,**
*Appellant,*

**v.**

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

---

2012-1457, -1466

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 56349, 57074, Administrative Judge Monroe E. Freeman, Jr.

---

Decided: January 15, 2013

---

MICHAEL H. PAYNE, Cohen Seglias Pallas Greenhall & Furman, of Philadelphia, Pennsylvania, for appellant. Of counsel was JOSEPH A. HACKENBRACHT, JR.

DANIEL B. VOLK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney

General, JEANNE E. DAVIDSON, Director, BRYANT G. SNEE, Deputy Director.

––––––––––––––––––––

Before DYK, MOORE, and WALLACH, *Circuit Judges.*

PER CURIAM.

M.E.S., Inc. appeals a decision by the Armed Services Board of Contract Appeals ("Board") denying M.E.S.'s claims for equitable adjustments under a construction contract. The Board found that M.E.S. had failed to present sufficient evidence to support the two claims at issue in this appeal. We *affirm*.

BACKGROUND

On September 29, 2001, the U.S. Army Corps of Engineers ("Corps") awarded M.E.S. a $10.3 million firm-fixed-price contract to design and build a fitness center at McGuire Air Force Base in New Jersey. The scheduled duration of the contract was 720 days, with a planned completion date of November 4, 2003. The project was repeatedly delayed, for reasons ranging from unusually severe weather to the discovery of unexpected quantities of asbestos in the existing structure. The Corps agreed to postpone the contract completion date twelve times, extending its duration by 345 days and awarding M.E.S. $626,469 in additional compensation. Three of the modifications were issued unilaterally by the Corps, and most of the remaining, bilateral modifications included a clause reserving M.E.S.'s right "to request additional compensation for the delay and impact costs, as well as any adjustment to the Overhead charged." J.A. 3. Though M.E.S. disputes it, at least one modification appears to have included an allowance for additional home office overhead accrued by M.E.S. as a result of the delay. The work was substantially completed on October 14, 2004.

M.E.S. submitted five claims for equitable adjustments to the Corps' contracting officer, totaling $1,250,597.33 (later amended to $1,593,949). The contracting officer denied each of the claims, and M.E.S. appealed to the Board. The Board sustained two of the appeals, awarding M.E.S. $105,286.03 (consisting of $97,908.70 for 155 days of additional field office overhead and $7377.33 for rental and installation of temporary bleachers, including profit and fourteen percent overhead), and denied three others. M.E.S. has appealed two of those denials.

In the first of the appealed claims (the "cost overrun claim"), M.E.S. sought $575,113 in cost overruns related to thirteen work activities, plus profit and overhead. M.E.S. sought compensation on two theories: first, that government-caused delays had created inefficiencies and increased M.E.S.'s material and labor costs, and second, that the government had constructively accelerated the project by denying M.E.S. additional time extensions. M.E.S. sought to recover the entire difference between the actual cost of each activity, including seven percent profit and fourteen percent overhead, and the projected value of the activity as included in its contract bid. The Board rejected this claim, finding that M.E.S. "ha[d] failed to prove that the claimed increased [cost] over and above the 'as-bid' amounts . . . was caused by government-directed acceleration or . . . government delays." J.A. 11; *see also* J.A. 14 (noting that M.E.S. had "failed to establish a causative connection between the delays and the alleged increased costs claimed").

In the second claim (the "overhead claim"), M.E.S. sought $459,845 in "additional Home Office Overhead Costs" for the added duration of the contract. J.A. 12 (quotation marks omitted). M.E.S. arrived at this figure by multiplying 210 days of allegedly government-caused

delay[1] by a daily allocable home office overhead rate of $2189.74.[2] The Board rejected this claim, too, finding that:

> None of these alleged dollar amounts [relied on by M.E.S. to calculate its daily rate] are supported in the evidentiary record by a [government] audit report, or in the absence of such report, by testimony or affidavit of the accountant preparing the claim or copies of the pertinent financial statements . . . prepared contemporaneously in the regular course of business, or other persuasive substantiating accounting documents. Moreover, nowhere in the [M.E.S.] calculation is there any allowance for home office expense paid in the price adjustments previously granted in the modifications for compensable government delays.

J.A. 13. The Board also found "no persuasive evidence that [M.E.S.] was required to remain on standby and/or was unable to shift its resources to other un-impacted work." J.A. 12.

---

[1] The 210 "delay days" did not include the additional extensions to which M.E.S. alleged that it was entitled in its cost overrun claim, but which it never received.

[2] M.E.S. calculated this daily rate by dividing its 2004 revenue from the contract ($3,971,284) by its total revenue for the year ($4,359,551); multiplying this fraction by its total home office overhead for the year ($692,303); and dividing the result by the number of days it worked on the contract during 2004 (288). In its original claim, M.E.S. provided a separate daily rate for each of the four years during which it worked on the contract; before the Board, however, it sought to be compensated for the entire delay at the substantially higher 2004 rate.

M.E.S. timely appealed the Board's disposition of these two claims, and we have jurisdiction under 28 U.S.C. § 1295(a)(10).

DISCUSSION

This court may set aside the Board's determination on a question of fact only if it is "fraudulent, arbitrary, or capricious; . . . so grossly erroneous as to necessarily imply bad faith; or . . . not supported by substantial evidence." 41 U.S.C. § 7107(b)(2). A determination is adequately supported if it is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *E.L. Hamm & Assocs. v. England*, 379 F.3d 1334, 1338 (Fed. Cir. 2004).

I. The Cost Overrun Claim

A. The delay theory

A contractor who seeks compensation for costs allegedly caused by government-imposed delays "has the burden of proving the fundamental facts of liability and damages." *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994). Here, the Board found "no persuasive and particularized evidence . . . establishing the nature and extent of specific interferences or inefficiencies and how they materially increased [M.E.S.'s] cost," and concluded that "[M.E.S.] ha[d] failed to prove that the [cost overruns] w[ere] caused by . . . compensable government delays." J.A. 8, 11.

On appeal, M.E.S. points to testimony by its president and owner, George Makhoul, recounting the delays it experienced and tying them to a few specific cost escalators such as material and labor cost inflation and difficulty working in cold weather. M.E.S. has not attempted to quantify the specific additional costs directly attributable

to any particular item, and instead has asserted that *all* its overruns on the thirteen activities, measured relative to the cost estimates developed for its bid, were caused by the delays. Substantial evidence therefore supports the Board's conclusion.

## B. The acceleration theory

Constructive acceleration occurs "when the government requires the contractor to adhere to the original performance deadline set forth in the contract even though . . . excusable delay[s] . . . entitle the contractor to a longer performance period." *Fraser Constr. Co. v. United States*, 384 F.3d 1354, 1361 (Fed. Cir. 2004). To prove such a claim, the contractor must prove "that the government insisted on completion of the contract within a period shorter than the period to which the contractor would be entitled." *Id.* Here, the Board found that M.E.S. "has not proven that it was entitled to any extension of the contract performance time beyond [October 14, 2004]." J.A. 10.

The contractor's theory was that it was entitled to additional delay days and that the government compelled it to complete by October 14, 2004, thus leading to an acceleration claim. The evidence cited by M.E.S. on appeal to demonstrate that it was legally entitled to a later completion date, beyond October 14, 2004, consists of two letters, from August and September 2004, in which the contractor stated, in a conclusory manner, that the completion date was January 2005 or later. *See* J.A. 207, 1115. The Board found the contractor's evidence insufficient to "prove[] that it was entitled to any extension of the contract performance time beyond [October 14, 2004]." J.A. 10. Substantial evidence supports the Board's finding that M.E.S. "has failed to prove that the [cost overruns] w[ere] caused by government-directed acceleration." J.A. 11.

## II. The Overhead Claim

M.E.S. claims that the Board erred in denying its claim for additional home office overhead. As a general rule, home office overhead damages are calculated in government contract cases by applying a fixed percentage to the additional direct costs included in the contract modification or in the claim for equitable adjustment. *See C.B.C. Enters., Inc. v. United States*, 978 F.2d 669, 674-75 (Fed. Cir. 1992). Indeed, the Corps included an allowance for home office overhead in at least one of the modifications it issued to M.E.S., and M.E.S. was awarded a fixed percentage for overhead in one of the two claims allowed by the Board. M.E.S.'s second claim on appeal does not rely on this theory, however.[3] Rather, the overhead claim relies on the so-called *Eichleay* formula, derived from the Board's decision in *Eichleay Corp.*, ASBCA No. 5183, 60-2 BCA ¶ 2688, *aff'd on reconsid.*, 61-1 BCA ¶ 2894.[4]

In certain limited circumstances, this court has approved the use of the *Eichleay* formula, which relies on a daily allocable overhead rate, as an alternative to the fixed-percentage method. In order to recover *Eichleay*

---

[3]     M.E.S. did include a fixed percentage of overhead in the damages it sought in its first claim on appeal, the cost-overrun claim.

[4]     In its reply brief, M.E.S. asserts for the first time that the damages it seeks are not *Eichleay* damages, but rather "insufficient compensation for its general and administrative expenses associated with contract modifications." Reply Br. 26. The formula it used to calculate its alleged damages is clearly based on *Eichleay*, however, and it previously claimed to be "using the Eikley [sic] formula," *see* J.A. 70. In its briefs, M.E.S. refers interchangeably to "overhead" and "G&A," or "general and administrative," expenses.

damages, however, a contractor must demonstrate, among other elements, that "performance of the contract [was] suspended or significantly interrupted" by the government, and not merely that the period of contract performance was extended and an additional stream of direct costs created. *See Interstate Gen. Gov't Contractors, Inc. v. West*, 12 F.3d 1053, 1056-58 (Fed. Cir. 1993); *see also Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581-82 (Fed. Cir. 1993), *modified on reh'g*, 1993 U.S. App. LEXIS 31453 (Fed. Cir. May 21, 1993); *C.B.C. Enters.*, 978 F.2d at 674-75. The requirement that the work on the contract must have been suspended or interrupted is one facet of the more general requirement that the government must have placed the contractor on "standby." *See Interstate*, 12 F.3d at 1056-57 & n.5; *see also P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1371-73 (Fed. Cir. 2003) (outlining the elements of the standby requirement). Here, the Board found "no persuasive evidence that [M.E.S.] was required to remain on standby" during any of the additional time periods, J.A. 12, and we find no reason to disturb this finding.[5]

Even if M.E.S. in this claim had proceeded on the theory that it is entitled to home office overhead as a fixed percentage of the additional direct costs caused by the

---

[5] On appeal, M.E.S. points to evidence showing that it had no other contracts during most of the time that it was engaged by the Corps. The "standby" element requires a contractor to show more than just that delays rendered it idle; it must also show that the government *required* it to remain idle, or that circumstances otherwise rendered mitigation "impractical." *See Daly Constr., Inc. v. Garrett*, 5 F.3d 520, 522 (Fed. Cir. 1993); *see also Cmty. Heating*, 987 F.2d at 1582 (requiring the contractor to "demonstrate[] that it could not have taken on any other jobs during the contract period").

contract modifications, M.E.S. could not prevail. M.E.S. has failed to present, at any stage of the litigation, a sufficient calculation of such damages. The Board found M.E.S.'s home office overhead calculation to be deficient both for its lack of substantiation and for its failure to account for those home office overhead amounts already included by the Corps in its price adjustments. Substantial evidence supports the Board's determination that "the alleged increased home office expense incurred for compensable government delays is not proven in any amount." J.A. 13.

Thus, substantial evidence supports the Board's findings that M.E.S. failed to prove that its overruns were caused by government delays; that any "acceleration" of the contract took place; or that M.E.S. is entitled to additional compensation for home office overhead.

**AFFIRMED**