# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Garco Construction, Inc. ) ASBCA Nos. 57796, 57888
)
Under Contract No. W912DW-06-C-0019 )

APPEARANCES FOR THE APPELLANT: Steven D. Meacham, Esq.
John V. Leary, Esq.
Peel Brimley, LLP
Seattle, WA

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
Engineer Chief Trial Attorney
Francis X. Eugenio, Esq.
Engineer Trial Attorney
U.S. Army Engineer District, Seattle

## OPINION BY ADMINISTRATIVE JUDGE CLARKE ON THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The government moves for partial summary judgment[1] based on what it contends is a sovereign act limiting access of contractor convict employees to the jobsite on Malmstrom Air Force Base (MAFB). We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We grant the government's motion for partial summary judgment in part and deny it in part.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 3 August 2006 the U.S. Army Corps of Engineers (COE) awarded Contract No. W912DW-06-C-0019 (0019) to Garco to replace family housing, phase VI, at MAFB (R4, tab D at 10-2, -3). MAFB supports the 341st Missile Wing, one of three U.S. Air Force Bases that maintains and operates Minuteman III intercontinental ballistic missiles (gov't mot., ex. C, BG Finan decl. ¶ 2). MAFB is designated a Protection Level 1 (PL1) installation, the highest security level in the Air Force (id.).

---

[1] ASBCA No. 57796 is the original convict labor appeal. ASBCA No. 57888 is a "protective appeal" for 57796. The motion is styled "partial" because the issue of a time extension remains.

2. The contract included the following FAR clause:

> 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (JAN 2006)
>
> (a) The Contractor shall comply with agency personal identity verification procedures identified in the contract that implement Homeland Security Presidential Directive-12 (HSPD-12), Office of Management and Budget (OMB) guidance M-05-24, and Federal Information Processing Standards Publication (FIPS PUB) Number 201.
>
> (b) The Contractor shall insert this clause in all subcontracts when the subcontractor is required to have physical access to a federally-controlled facility or access to a Federal information system.

(R4, ex. D at 30)

3. The contract included Section 01001, "SUPPLEMENTARY REQUIREMENTS," that included:

> 1.6 IDENTIFICATION OF EMPLOYEES AND MILITARY REGULATIONS:
>
> (a) The Contractor shall be responsible for compliance with all regulations and orders of the Commanding Officer of the Military Installation, respecting identification of employees, movements on installation, parking, truck entry, and all other military regulations which may affect the work.
>
> (b) The work under this Contract is to be performed at an operating Military Installation with consequent restrictions on entry and movement of nonmilitary personnel and equipment.

(R4, ex. D at 01001-2)

2

4. The contract included Section 01005, "SITE SPECIFIC SUPPLEMENTARY REQUIREMENTS," which included the following:

### 1.3 GENERAL AREA REQUIREMENTS

Security requirements and procedures shall be coordinated with the 341 Security Forces Squadron, Resource Protection (telephone 406-731-4344), Malmstrom AFB. Activities of the Contractor and Contractor's employees and subcontractors and their employees while on the base, will be conducted in accordance with base regulations, including those of the fire marshal, as well as security directives. This includes, but is not limited to, obtaining a Work Clearance Request (AF Form 103) before any digging and yielding to alert vehicles during alerts if located on a marked alert route. Security directives include Antiterrorism Force Protection (paragraph 1.3.4 below) and the GENERAL CONTRACTING ENTRY AUTHORITY LIST attached [at] the end of this Section. This list shall include all Contractor personnel working on the base.

(R4, ex. D at 01005-1)

5. At time of award, MAFB, 341st Space Wing Pamphlet 31-103, 21 July 2005, Local Security Policy and Security Procedures for Contractors, established "policy for contractors who require[] entry to the installation" (R4, tab F, subtab 102). Paragraph 5 of the pamphlet deals with entry to the base:

**5. Obtaining Entry Credentials/Passes.** Contractors will be permitted to enter MAFB by following the procedures set forth in this pamphlet....

....

5.2 Upon award of a contract, the contractor will be issued an Entry Authority List (EAL) (**Attachment 5**) by the contract administrator in 341 CONS. The contractor will need to submit the required information for the EAL, to the contract administrator in 341 CONS prior to coming to MAFB. Once the letter is received from 341 CONS, the Visitor Control Center will forward the EAL to the 911 Dispatch Center. A 911 Dispatcher will run the employees name through the National Criminal Information Center system for a wants and warrants check. Unfavorable results will be scrutinized and

3

eligibility will be determined on a case-by-case basis by the
341 SFG/CC.

(R4, tab F, subtab 102 at 2-3)

6. The Notice to Proceed was issued to Garco on 21 August 2006 (gov't mot., ex. G).

7. A pre-construction conference was held on 12 September 2006 that was documented in a 27 September 2006 set of minutes sent to Garco (R4, tab E, subtab 101).[2] Representatives of Garco and its subcontractor James Talcott Construction, Inc., (JTC) attended (gov't mot., ex. H). The minutes included, "[n]o one with outstanding warrants, felony convictions, or on probation will be allowed on base" (R4, tab E, subtab 101 at 2).

8. On 9 May 2007 Garco forwarded a letter, dated 8 May 2007, from JTC that stated in part:

> Per FAR 52.222-3 Convict Labor, this clause allows for the employment of persons on parole or probation. However, JTC does not understand why these individuals are continually being denied base access/passes. The unemployment rate in Montana is at a historical low. The construction industry is in need of qualified employees and these individuals should not be denied access to our jobsites. This issue is impacting and delaying JTC's performance of this contract.

(R4, tab E, subtab 102)

9. On 17 May 2007, JTC emailed COL Geofrey A. Frazier, MAFB, asking if JTC could chauffer pre-release convict employees on post and take other precautions in order to gain access to the jobsite (app. opp'n, ex. 6 at 3). COL Frazier responded stating, "[o]ur contracting, legal and security experts are meeting early next week to discuss this issue" and brief COL Finan (*id.* at 2).

10. Between 17 May and 10 September 2007, there were a number of meetings and communications both internal to the Air Force and between the Air Force and Garco/JTC relating to the pre-release convict employee access issue (app. opp'n, exs. 7, 8, 10, 11).

---

[2] The copy in the record is unsigned, however, Garco did not contest the accuracy of the minutes in its opposition.

11.  In a 10 September 2007 email from Mr. Brad A. Bradley, Administrative Contracting Officer (ACO Bradley), to JTC concerning the parolee labor access to MAFB, he wrote:

> I've received an email from Nancy Sinclair of the JAG office. A new policy is being worked on. The Wing Commander has been briefed on the issue. Until the new policy is finalized, the Base has no further news to offer regarding the issue. Wish I could offer more insight on this. I can tell you that I was at a meeting in the June timeframe with COL Finan regarding this issue, and I tried to stress to her just how tight the labor pool is right now. She was willing to readjust her policy, but she is concerned how the change would be implemented so that it is applied fairly to all Base contractors.

(Gov't mot., ex. K)

12.  On 30 October 2007 ACO Bradley, forwarded to Garco an "updated" MAFB policy memorandum on contractor personnel access to MAFB signed by the base commander COL Finan, but undated (R4, tab E, subtab 103). The memorandum read in part:

> MEMORANDUM FOR ALL CONTRACTORS AND CONTRACTOR PERSONNEL
>
> ....
>
> SUBJECT: Malmstrom AFB Installation Access for Contractor Personnel
>
> 1. In order to preserve good order and discipline and safeguard personnel, resources and facilities by the authority granted to me by the Internal Security Act of 1950, this policy is effective immediately for all contractors and contractor personnel.
>
> ....
>
> c. The 911 Dispatch Center will input a listed employees' name and data into the National Criminal Information Center (NCIC) database for a background check in accordance with Air Force directives. Unfavorable results from the background check will result in individuals being denied

5

access to the installation, including, but not limited to, individuals that are determined to fall into one or more of the following categories: those having outstanding wants or warrants, sex offenders, violent offenders, those who are on probation, and those who are in a pre-release program. The definition of sex offender and violent offender can be found at Montana Code Annotated § 46-23-502.

(R4, tab E, subtab 103) Garco does not dispute that COL Finan, as MAFB's Base Commander, had the authority to issue the policy memorandum nor does Garco dispute that the policy memorandum, by its terms, applied to "all contractors and contractor personnel" effective immediately.

13. By letter dated 13 November 2007, Garco submitted to the ACO a request for equitable adjustment from JTC, dated 25 October 2007, in the amount of $454,266.44 (R4, tab E, subtab 104). JTC explained:

> FAR 52.222-3 CONVICT LABOR (JUN 2003) specifically states that we are allowed to hire and employ individuals convicted of an offense for this contract. This FAR has been in previous contracts, and we planned on and used these individuals for other contracts. Because it is also in this contract, we based our cost estimates for Phase VI on our ability to use these same individuals or pool of individuals. There is a nationwide shortage of experienced construction workers. It is well documented that the problem is even more acute in Montana with our very low unemployment rate.

(*Id.* at 2)

14. On 18 December 2007, CO Nancy A. Gary determined that JTC's REA "has no merit" and suggested that if Garco/JTC disagreed they should "pursue resolution per the requirements of FAR 52.233-1, DISPUTES" (R4, tab E, subtab 106).

15. By letter dated 21 February 2008 to the ACO, Garco requested reconsideration of JTC's REA (R4, tab E, subtab 107). The ACO responded on 1 April 2008 reiterating that it found no merit in the REA and again referring Garco/JTC to the disputes process (R4, tab E, subtab 109).

16. By letter dated 12 June 2008 to Garco, JTC again explained its position:

> When our employees were first denied access to MAFB in early 2007, we asked for an explanation. A response from

MAFB Contracting Officer Arlene Stern dated May 21, 2007, informed us that **"The Wing Commander makes all decisions to grant or deny on a case-by-case basis. However, individuals who have been convicted as violent offenders or any sexual crime in nature will be denied entry to the base."**

However, JTC employees denied access were not violent or sexual offenders.

(R4, tab E, subtab 111 at 3) (Emphasis in original) On 25 June 2008, Garco forwarded JTC's letter to the ACO and requested a contracting officer's final decision (*id.* at 1).

17. In an undated letter[3] by Mr. Roger Lesofski, Job Developer/System Analyst of Great Falls Pre-Release Center, to JTC, Mr. Lesofski wrote:

> Per our discussion last week the 19th of May, I went back and checked my employer records at the Pre-Release Center. I can confirm to you that we had many residents working on Malmstrom AFB during the new construction period starting in 2001 thru 2005 and most of 2006. As you are aware we had residents working for you, Atherton Construction and other sub contractors. Which was working exceptionally well for us, as well as the contractors. We were able to insure to the contractors that these individuals were tested on a weekly basics [sic] for drugs, which provides a better work force. During the period that Colonel Finan became the base commander approximately 2 years ago, [a] Memorandum for all contractors was released from her office. The Memorandum stated that Pre Release residents would be denied access to work on the base. Thus in effect eliminating the opportunity for your company and other contractors the use of our trained and qualified workers.

(Gov't mot., ex. L)

18. By letter dated 12 September 2008 to Garco, the alternate ACO, Allen R. Gallagher, stated that it had no record of Garco's 25 June 2008 request for a

---

[3] The copy in the record has a partial fax date at the top reading "y 28, 2008." In addition, the reference to "2 years ago" in the letter implies that this letter was written in 2008.

final decision and suggested that if Garco/JTC desired a final decision that they should submit a certified claim (R4, tab E, subtab 113).

19. On 24 May 2011, Garco submitted a certified "Pass Through" claim in the amount of $1,415,718.40 (R4, tab E, subtab 115). On 28 September 2011, Garco appealed, on a deemed denial basis, the CO's failure to issue a final decision (R4, tab E, subtab 118). On 29 September 2011 the Board docketed Garco's appeal as ASBCA No. 57796 that was later consolidated with ASBCA No. 57888.

## DECISION

Moving for summary judgment the government argues that COL Finan's policy of excluding pre-release convicts from MAFB was a sovereign act and as such appellant cannot recover money damages even if the policy caused its costs of performance to increase (gov't mot. at 14-16). The government relies in large part on *Conner Bros. Construction Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008) wherein the Federal Circuit affirmed the Board's decision in *Conner Bros. Construction Co.*, ASBCA No. 54109, 07-2 BCA ¶ 33,703. The government argues that FAR 52.222-3, CONVICT LABOR (JUN 2003) (Convict Labor clause) does not guarantee access to military installations.

Appellant counters that it has a "long history" of over 20 years performing construction projects on MAFB and that during this time it was allowed to employ workers with criminal records and they were allowed on MAFB (app. opp'n at 6-7). It complains that in early 2007 under COL Finan, workers that were previously allowed on base were excluded and the change in policy increased its costs of performance (app. opp'n at 7-8). Appellant argues that the new policy was established in an arbitrary, unpredictable or discriminatory manner (app. opp'n at 25). Appellant complains that there was no pre-award notice of the policy change (app. opp'n at 30), that the "unwritten" policy was implemented without notice (app. opp'n at 29), that the COE was "Intimately Involved in Developing and Promulgating the New Policy" (app. opp'n at 34), and that questions of material fact exist relating to each of its allegations. Alternatively, it argues that the motion should be denied because it has not had a full opportunity to conduct discovery in defense of the government's motion (app. opp'n at 39).

Summary judgment is appropriate only where there is no genuine of material fact and the moving party is entitled to judgment as a matter of law. Any significant doubt over factual issues, and all reasonable inferences, must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Dixie Construction Co.*, ASBCA No. 56880, 10-1 BCA ¶ 34,422 at 169,918. "[S]ubstantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006).

8

FAR 52.222-3, Convict Labor (Jun 2003) provides, in part, that "(a) Except as provided in paragraph (b) of this clause, the Contractor shall not employ in the performance of this contract any person undergoing a sentence of imprisonment imposed by any court of a State...." Paragraph (b) of the clause provides, however, that the contractor "is not prohibited from employing person" meeting certain criteria. We agree with the government that this Convict Labor clause does not mandate that convict labor hired will be granted access to military installations.

The facts of this case can be divided into two distinct time frames: before and after COL Finan issued the October 2007 memorandum setting forth MAFB's policy on contractor employee access to MAFB. We have reviewed the reasons Garco advances for denying the government's motion for summary judgment pending further discovery (app. opp'n at 39-42). As explained below, we are not persuaded that any of the reasons Garco articulated are material to the legal elements of the sovereign act issue that arises as a consequence of COL Finan's October 2007 policy memorandum. Further discovery, however, may yield material facts in dispute relating to the exclusion of pre-release convicts from MAFB prior to the issuance of the October 2007 policy memorandum.

COL Finan was commander of MAFB between July 2006 and May 2008 (gov't mot., ex. C). Contract 0019 was awarded to Garco on 3 August 2006 (SOF ¶ 1). The contract included clauses that required Garco to comply with agency personal identity verification procedures (SOF ¶ 2), with all regulations and orders of the Commanding Officer of the Military Installation affecting the work (SOF ¶ 3), and with base security requirements and procedures (SOF ¶ 4). In August 2006 MAFB's policy concerning contractor employee access to MAFB provided that an employee's name would be run through the National Criminal Information Center system and any "unfavorable results" would be "scrutinized" and eligibility for access to MAFB would be determined on a "case-by-case basis" (SOF ¶ 5). During a 12 September 2006 pre-construction conference attended by Garco and JTC, it was explained that "[n]o one with outstanding warrants, felony convictions, or on probation will be allowed on base" (SOF ¶ 7).

Garco/JTC's claim arises from the fact that JTC hired pre-release convicts with construction experience to work on contract 0019, but MAFB denied these employees access to the base (SOF ¶¶ 8, 16). JTC asserts that this policy was not consistent with its prior experience with MAFB or the Convict Labor clause, and it "impact[ed] and delay[ed] JTC's performance" (SOF ¶¶ 8, 13, 17). It was not until October 2007 that the policy of denying base access to pre-release convicts was put in writing in a memorandum for "ALL CONTRACTORS AND CONTRACTOR PERSONNEL" issued by the base commander, COL Finan (SOF ¶ 12).

While the parties focus on *Conner Bros. Construction*, 550 F.3d 1368, in their briefs, we rely both on *Conner* as well as a more recent case that is factually similar to

9

this appeal, *M.E.S., Inc.*, ASBCA No. 56149 *et al.*, 12-1 BCA ¶ 34,958, *aff'd*, 502 F. Appx. 934 (Fed. Cir. 2013). In *M.E.S.* (ASBCA No. 56350) the contractor claimed costs associated with a change in the base access policy that caused its employees to spend an hour each day gaining access to the installation. Citing clauses similar to those in contract 0019, the Board decided that the change in the base access policy was a sovereign act. The Board applied the following criteria:

> With respect to the claimed price adjustment for the delay, we have found above that the changed entry procedures were required by the installation Security Forces Squadron and Air Force Instructions. They were of a public and general nature applicable to all contractors at the installation. They were intended to improve the physical security of the installation, were not intended specifically to nullify contract rights, and they provided no economic advantage to the government. (Finding 37) We conclude that the changed entry procedures were a sovereign act of the government for which no monetary compensation is due. *See Conner Bros. Construction Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008).

*Id.* at 171,856.

As in *M.E.S.,* we deal with a change in base access policy and we apply the same standards to arrive at our decision. In her declaration, Brigadier General (BG) Sandra E. Finan, former commander of MAFB during the relevant time period, explained that she issued the October 2007 Memorandum for all Contractors and Contractor Personnel, Subject: Malmstrom AFB Installation Access for Contractor Personnel, pursuant to authority granted to her by the Internal Security Act of 1950. She stated that she "clarified the requirements of HSPD-12, OMB implementing guidance for HPSD-12, AFI 10-245, AFSPC Sup 1 and 341st Space Wing Pamphlet 31-103" (gov't mot., ex. C, BG Finan decl. ¶ 4). She clarified what constituted "unfavorable" information in the 341st Space Wing Pamphlet 31-103 (*id.*; SOF ¶ 5). The clarification indentified the following individuals that would be denied access to MAFB: "those [individuals] having outstanding wants or warrants, sex offenders, violent offenders, those who are on probation, and those who are in a pre-release program" (Finan decl. ¶ 4; SOF ¶ 12). BG Finan stated, "[t]he purpose of my policy was to ensure the safety of personnel on the installation and preserve the good order and discipline on the installation" (Finan decl. ¶ 4). The policy memorandum on its face applies to all contractors and contractor personnel, therefore, it is public and general in nature and applies to all contractors at the installation. There is no evidence that the policy was intended to nullify contract rights or that it provided to the government an economic advantage. Appellant presents no evidence contradicting BG Finan's declaration. All of the criteria in *M.E.S.* are satisfied by the written memorandum of October 2007. The

implementation of the base access policy by the October 2007 memorandum was a sovereign act and the government is not liable in damages that may have been caused from October 2007 forward.

For the time period before the October 2007 memorandum the record is less clear. In its opposition, appellant presents an analysis of contemporaneous documents detailing the process leading up to COL Finan's execution of her October 2007 memorandum. This analysis paints a picture of inconsistent explanations of the policy. However, it appears that the Air Force was consistent about not allowing pre-release convicts on MAFB from early 2007 (SOF ¶ 8). The record is not sufficiently developed to allow the Board to grant the motion for the period between contract award in August 2006 and issuance of the October 2007 memorandum.

## CONCLUSION

The government's motion for partial summary judgment is granted as to the period after COL Finan signed the October 2007 base access policy memorandum. The government's motion for partial summary judgment is denied as to the time period before COL Finan signed the October 2007 base access policy memorandum.

Dated: 14 January 2014

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

PETER D. TING
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

11

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 57796, 57888, Appeals of Garco Construction, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
