ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Meltech Corporation, Inc. | ) | ASBCA No. 61765 |
| | ) | |
| Under Contract No. W912DR-14-D-0021 | ) | |

APPEARANCES FOR THE APPELLANT:    Leonard A. Sacks, Esq.
                                  Leonard A. Sacks & Associates, P.C.
                                  Rockville, MD
                                  Fred A. Mendicino, Esq.
                                  Faughnan Mendicino PLLC
                                  Dulles, VA

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                  Engineer Chief Trial Attorney
                                  Adam J. Kwiatkowski, Esq.
                                   Engineer Trial Attorneys
                                   U.S. Army Engineer District, Baltimore

OPINION BY ADMINISTRATIVE JUDGE CATES-HARMAN

This appeal arises from a contract between Meltech Corporation, Inc. ("Meltech" or "appellant"), and the U.S. Army Corps of Engineers ("USACE" or "government") for a Multiple Award Task Order contract that included both Design-Build and Design-Bid-Build construction projects within the Baltimore District Area of Responsibility, and the September 30, 2014 award by USACE of a Firm-Fixed-Price Task Order No. 0002 to Meltech for all costs in connection with the renovation, design and construction of Building 8609, located at Ft. Meade, MD. This appeal is related to fifteen (15) other appeals that were consolidated and heard by the Board.*

In this appeal, Meltech claims that the government interfered with its work by changing its base access policy, making it much harder and causing delay to get access to the base for Meltech's workers and drivers. On November 1, 2017, Meltech filed its request for equitable adjustment seeking, in part, 87 days of delay caused by unforeseen/changed conditions associated with badging and base access during the time

---

* ASBCA Nos. 61694, 61762, 61763, 61764, 61765, 61766, 61767, 61869, 61870, 61871, 61872, 62091, 62987. The lead appeal is ASBCA No. 61694. A decision on summary judgment was issued on ASBCA Nos. 61706 and 61768 on December 17, 2021. A decision on the merits was issued on July 16, 2025, in ASBCA Nos. 61766, 61767, 61872. Familiarity with those decisions is presumed.

period of December 2016 to April 2017. Specifically, Meltech claims that after the change in the security policy, it was required to provide sponsorship, escort duties, and delivery impacts for getting workers base access and clearance. On April 30, 2018, Meltech converted its request for equitable adjustment to a claim. The contracting officer did not issue a final decision. Meltech timely appealed to the Board on a deemed denial basis on August 23, 2018, and the Board has jurisdiction over these appeals under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. A nine-day hearing was held via videoconference for the fifteen (15) Appeals. For the reasons stated below, we deny Appeal No. 61765.

FINDINGS OF FACT

*Background*

1. On June 10, 2014, USACE issued a Request for Proposals (RFP) for a Multiple Award Task Order Contract (MATOC) that included design-build and design-bid-build construction projects within the Baltimore District [A]rea of Responsibility. This was Phase 1 of a two-phase construction procurement. (Joint Stipulations of Fact (JSOF) ¶ 1; R4, tab 2))

2. The MATOC included renovating several similar dormitory buildings at Fort Meade, including Building 8609 (JSOF ¶ 3).

3. On August 14, 2014, USACE issued Amendment 0003 to RFP W912DR-14-R-0003 for two seed projects under the MATOC to provide Design Criteria for the Design-Build renovation of Building 8609 at Fort Meade and Building 4501 at Aberdeen Proving Ground. Each task order was to be awarded separately (JSOF ¶ 7).

4. On September 15, 2014, Meltech submitted its technical and cost proposals for the Building 8609 renovation. Meltech's proposal included a preliminary schedule. According to this schedule, the design period would begin on November 18, 2014, and end on June 4, 2015. The construction period would begin on May 29, 2015, and end on April 26, 2016. (JSOF ¶¶ 11-12)

5. On September 29, 2014, USACE awarded Meltech Base Contract No. W912DR-14-D-0021. On September 30, 2014, USACE awarded Task Order Contract No. 0002 to Meltech for the renovation of Building 8609 at Fort Meade. The Task Order Contract provided Meltech with a 540-calendar day performance period beginning from the Notice to Proceed date. The Notice to Proceed was issued on November 17, 2014, and the original completion date was May 10, 2016. (JSOF ¶¶ 13-16)

**BASE ACCESS, CONSTRUCTION PHASE DELAYS – ASBCA No. 61765**

*Fort Meade heightened security*

6.  When the project began in 2014, Fort Meade was an "open base," and anyone with valid identification could enter the base (R4, tab 199 at 1-3; tr. 4/30, 212).

7.  On March 11, 2016, Fort Meade Director, Directorate, Plans, Training, Mobilization and Security, sent an email addressing "New Installation Access Procedures," with an effective date of April 4, 2016.  The new procedures aligned "with U.S. Army standards across military posts world-wide."  (App. supp. R4, tab 555 at 6-9)  These were base-wide security changes initiated by Fort Meade for general security reasons (tr. 4/32-33, 212-13).  Once the new base access policies were implemented, visitors were required to get a permit or pass to enter the property (tr. 4/212).  The change in policy was made by Fort Meade Security (tr. 4/31).

8.  Attached to the March 11, 2016 email was a pamphlet titled "The New Installation Access Procedures," which explained that "[i]ndividuals without DoD-issued ID cards must obtain a Fort Meade Access pass from the Visitor Control Center . . . [and] [f]requent visitors are encouraged to pre-register for a long-term . . . pass."  The installation access procedures included a telephone number for questions surrounding Fort Meade access.  (App. supp. R4, tab 555 at 6-9)

9.  Attached to the New Installation Access Procedures pamphlet were common questions and answers, including, "how can I enter Fort Meade if I don't have a military ID card? . . . A valid reason to visit the installation. . . . A Fort Meade Access pass."  The pamphlet provided two options to obtain a Fort Meade access pass: a one-day pass and multi-day access passes.  The one-day pass required an enhanced driver's license or a U.S. Passport and submission to an NCIC III background check through the Fort Meade Visitor Control Center (FMVCC).  The multi-day pass required a completed FGGM 192 form and appropriate identification (three options).  Option 1 included the driver's license, birth certificate, and social security card; option 2, U.S. Passport and social security card; option 3, for visitors who did not have an enhanced driver's license, the process required a U.S. Passport, social security card, and driver's license.  Submission procedures for new badging required a requestor to provide scanned documents in color (app. supp. R4, tabs 555 at 2, 10-11; 603; R4, tab 199 at 2).

10.  In response to Meltech's questions, USACE Project Engineer Melvin Damoudt, by email dated April 21, 2016, described the application process, which included subcontractors providing their documentation to Meltech, who forwarded it to the USACE sponsor, who would evaluate each application, and if they approved, forward it to the FMVCC for review and background checks.  The Project Engineer cautioned Meltech that the background checks alone would likely take around 10 days.  (App. supp.

3

R4, tab 555 at 12)  FMVCC notified the USACE sponsor of the final disposition of each application through email, and USACE informed Meltech whether the applicant was cleared or rejected and the deadline to pick up the new access badge from FMVCC.  The Project Engineer informed Meltech that badges not timely picked up from FMVCC would be destroyed and the applicant would need to resubmit the access application package.  (App. supp. R4, tab 555 at 12; R4, tab 199 at 2)  On or about February 22, 2017, the government transferred the sponsorship and escort duties to Meltech.  Along with other responsibilities, the badging application process included receiving, reviewing applications, and submitting them to FMVCC for approval (tr. 4/15-16).  Meltech submitted PCO #23 – Base Access Sponsorship & Escort Duties Change seeking compensation in the amount of $55,373.00 (R4, tab 198).

*FMVCC streamlined the badging application process, extended badging application deadlines, and required delivery drivers to be badged*

11.  In an effort to streamline the application process, on May 3, 2016, USACE instituted a new fillable form, FGGM 191, to be utilized immediately for submitting badging information (R4, tab 199 at 2; app. supp. R4, tab 555 at 19).

12.  In early May 2016, Meltech was advised by the USACE Project Engineer that the base access expiration date would be moved from June 20, 2016 to January 31, 2017, to allow Meltech additional time to resubmit its applications for badging (app. supp. R4, tab 555 at 22).

13.  On May 16, 2016, Meltech's Senior Project Manager sent a letter to USACE describing its badging delays due to the new FMVCC procedures.  Meltech complained the documents were required to be submitted in color, causing the "subcontractors to go back to their personnel to have them resubmit to the new regulations," and for Meltech to submit applications on the correct form.  (App. supp. Rule 4, tab 555 at 2-3)  The Senior Project Manager stated, "Meltech fully understands that this is not the cause of USACE but rather an Unforeseen/Change Condition that is out of the hands of both the client and contractor."  Meltech requested an additional 49 days of delay as a result of the change to the badging process.  (App. supp. R4, tab 555 at 3)

14.  The meeting minutes dated June 2, 2016, noted that Meltech complained that it was taking 2-3 weeks to get subcontractor approvals for badging (app. supp. R4, tab 554).

15.  On December 1, 2016, Meltech was verbally informed that a new delivery driver policy was taking effect the same day, which required all delivery drivers to have a permanent badge to make on-base deliveries (R4, tab 199 at 4-5; app. supp. 570 at 1).  Meltech received mixed information in its inquiries into what kind of paperwork must be submitted and to whom, for how long the badges would be valid, and which gate the delivery drives should use (app. supp. R4, tab 570 at 1).

16. On December 23, 2016, the USACE Project Engineer informed Meltech, that effective January 20, 2017, "the government will no longer be providing escorts or processing installation passes to any contractor or subcontractor" (*id.*).

*FMVCC extended badging application deadlines and badging expiration dates*

17. After Meltech received a confirmation email on December 28, 2016, that its personnel could pick up their badges no later than January 6, 2017, some personnel had issues with obtaining their badges; the badging office could not find their badge or had no record of them (app. supp. R4, tab 569). Although some of the access badges could not be located, the badging office corrected the problem the same day by issuing a temporary 30-day pass to those affected (app. supp. R4, tabs 569; 570 at 1-2).

18. In a letter dated January 4, 2017, to the Administrative Contracting Officer (ACO), Meltech's Senior Project Manager stated that as its personnel badges were set to expire on January 31, 2017, it would submit its paperwork to the FMVCC approximately two weeks before the expiration deadline (app. supp. R4, tab 570 at 1). The Senior Project Manager noted that "Meltech fully understands that these issues were not caused by USACE but rather an Unforeseen/Change Condition that is out of the hands of both the client and contractor" (app. supp. Rule 4, tab 570 at 2).

19. Due to ongoing badge processing delays and application issues, FMVCC extended most of the personnel badges set to expire on January 31, 2017, until May 31, 2017 (app. supp. R4, tab 603).

20. On February 9, 2017, Fort Meade's FMVCC's computers crashed, hindering the badge application process for eight days (tr. 4/65-66; app. supp. R4, tab 603)). Meltech's Project Manager acknowledged that the responsibility lay with Fort Meade, not USACE (tr. 4/65-66).

21. Following inquiries from the USACE concerning badging delays, FMVCC identified numerous errors caused by Meltech, including last minute submissions, incomplete paperwork, failure to follow instructions, and poor communication with FMVCC. Over the course of the same time-period, FMVCC reported minimal issues with the over 3,500 background checks it performed each month for other organizations requesting access to Fort Meade:

> We have had multiple issues with Mr. Boyd [Meltech Project Manager] and our application process. The VCC processes over 3,500 background checks a month for 119 tenant organizations on Fort Meade. We have had to push other organizations background checks back or accommodate last minute badging far too many times for this project. Most

5

recently we received an application on a large oversized 11 x 17 inch piece of paper. We have to completely retype and print this application for processing, these issues are unacceptable and cannot continue.

. . . As of right now Meltech is responsible because of its inability to provide the information required for contractor badging timely and properly. There are many other USACE contractor sponsors completing their projects/badging without issue[.]

(R4, tab 197 at 6)

22. The ACO's letter dated June 16, 2017, titled "Letter of Concern," to Meltech, outlined dozens of issues that negatively affected the schedule. The ACO stated, "Meltech was responsible to coordinate properly and in a timely matter the access of the field crews, equipment and construction materials since February 15, 2017 . . . . However, USACE's received two notifications via email from Fort Meade Visitor Center [] on May 3 and May 10, 201[7] in which proves that the delays to the project . . . was caused by your poor coordination with Fort Meade Visitor Center." (R4, tab 197 at 6) The ACO concluded that Meltech's delays had been ongoing due to its "inability to manage the badging privileges at Fort Meade, and the delays observed . . . belongs only to Meltech." The ACO complained that Meltech "is not showing proactive actions to improve the schedule and prevent unnecessary delays to the project." (*Id.*) Because of these and other repeated issues, the ACO advised that Meltech's performance would be reflected in CPARS (R4, tab 197 at 7).

*Meltech requests compensation for badging delays, and the government issues a modification compensating Meltech for escorting and sponsorship duties*

23. As of July 31, 2017, Meltech's approved payment requisition showed the Project to be 98% complete (ex. A1; tr. 8/265:13-20; tr. 8/266:5-20).

24. On November 1, 2017, Meltech submitted a Request for Equitable Adjustment (REA) for 87 days of delay due to the unforeseen/changed conditions associated with badging and base access during the period of December 2016 to April 2017, for providing sponsorship, escort duties, and delivery impacts associated with getting base access for Meltech (R4, tab 199 at 5-7; app. br. at 62, ¶ 7). Meltech's November 1, 2017, REA contained a number of additional delay and compensatory equitable adjustments issues that are not part of this decision.

25. On April 30, 2018, Meltech requested a final decision regarding its November 1, 2017, REA "claiming an increase in the contract amount of $1,745,350 and a contract

time extension of 132 calendar days" (JSOF at 35, ¶ 2; R4, tab 200). Meltech's base access claim outlines two phases of delay associated with base access. The first "access/badging/delivery delays [is] from March 2016 to June 2016" for 49 days. The second base access claim period seeks 87 days of delay from December 2016 to April 2017. (R4, tab 199 at 2-7)

26. The parties executed a bilateral Modification No. R00011, dated September 6, 2018, which compensated Meltech in the amount of $49,974 for "Base Access Sponsorship & Escort Duties." Meltech's Chairman and CEO signed the Amendment on August 17, 2018. (R4, tab 201) The modification describes the scope of work as "Base Access Sponsorship & Escort Duties" and "[t]he contractor shall provide all supervision, labor, materials, and equipment to sponsor and escort subcontractors needed to perform work for building 8609 in Fort Meade" (*id.* at 2). The "contract completion date shall remain unchanged by this modification." The closing statement included a release of claims, which stated:

> It is understood and agreed that pursuant to the above, the contract time is not affected, and the contract price is increased as stated above, which reflects all credits due the Government and all debits due the Contractor. It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its Subcontractors and Suppliers for all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto, for all extended overhead costs, and for performance of the change within the time frame stated. You are hereby given Notice to Proceed with this change work as of the effective date of this modification as shown in block 16C.

(*Id.*)

27. Appellant also relies upon a memo dated April 29, 2019, authored by the USACE Project Engineer. The memo asserts that the government is liable for 85 calendar days of delay due to Fort Meade Base changing access regulations beginning on October 21, 2016 (app. supp. R4, tab 872). Any reliance by Meltech on the USACE Project Managers memorandum concerning government liability for delay is misplaced. The April 29, 2019 memorandum was written by the project manager post-contract when providing input on claims to the contracting officer in the evaluation process.

28. The Contracting Officer did not issue a final decision on Meltech's claim nor provide his assessment or acceptance of the conclusion reached by the Project Engineer in the April 29th memo (JSOF ¶ 3).

29. Consistent with appellant's position in its briefs where it seeks only the base access issues during the second time frame claimed, Meltech's Senior Project Manager, Barry Boyd, testified there were no delays resulting from the badging issues through June 2016, as subcontractors were cleared and working without any consequence or delay from FMVCC (tr. 4/62-63). We find that appellant and its subcontractors were not delayed during the first claimed phase of delay, March 2016 to June 2016, as a result of base access policy changes.

30. Regarding the second phase of delay due to "badging issues," Mr. Boyd, testified some subcontractors were denied badging for a variety of causes, including i) failure to provide accurate information on the application forms, ii) failure to submit the correct documentation, iii) late submission of documentation, and iv) failure to pass the background check, including issues of character or criminal history (tr. 4/16, 20, 45, 63-65, 73-74). Mr. Boyd admitted that he did not document what, if any, impacts resulted from badging issues (tr. 4/45, 65-66). He testified that due to staffing issues, he did not attempt to separate which personnel were denied badging and how any badging issues, if any, may have affected the project as it "was the least of my concerns and . . . I shouldn't have had to been worrying about that. That should have been the Corps of Engineers' issue" (tr. 4/65-66).

31. Mr. Boyd testified that he did not "make[] a habit of noting" in the daily reports that Meltech experienced issues associated with badging delays or base access (tr. 4/45). Other than February 16-23, 2017, Meltech's daily reports fail to mention issues associated with badging delays and base access (tr. 4/47-48).

32. Prior to submitting the REA, Mr. Boyd testified he made no attempt to analyze whether its delays were due to a lack of work efficiency or delay from base access changes (tr. 4/66).

DECISION

*Parties' Contentions*

Appellant argues that changes in the base access and security protocols starting on October 21, 2016, were not foreseeable, and the government is liable for the impact of those changes (app. br. at 88; app. reply br. at 35-36). Relying upon *Delhur Indus. v. United States*, 95 Fed. Cl. 446, 461 (2010), appellant argues that the base access changes are constructive changes that were "unanticipated conditions" that caused additional work and delays, for which the government is liable.

The government challenges appellant's positions and states that "[a]ny delays resulting from changes to Fort Meade's base access policies are non-compensable pursuant to the Sovereign Acts Doctrine," citing *APTIM Fed. Servs., LLC*, ASBCA

8

No. 62982, 22-1 BCA ¶ 38,127 (gov't resp. br. at 59-60). The government argues that the base access changes at Fort Meade were not caused by the Army Corps of Engineers and were not directed to Meltech or its subcontractors. Instead, the changes implemented by the leadership of Fort Meade were directed toward all visitors for general security reasons. (*Id.* at 59-62)

*Base Access Phase Delays and the Sovereign Acts Doctrine*

Under the sovereign acts doctrine, the government acting as a contractor cannot be held liable for its general and public acts as a sovereign. *StructSure Projects, Inc.*, ASBCA No. 62927, 23-1 BCA ¶ 38,416 at 186,680; *Am. Gen. Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,636. In *Conner Brothers Constr. Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008), the contractor was denied access to its work site on Fort Benning, Georgia, shortly after the attacks on September 11, 2001. The Federal Circuit upheld the Board's decision that the denial of access was a sovereign act. *Id.* at 1371, 1378-79. The sovereign acts doctrine is not limited to certain types of actions by the government. In *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1282, 1287-88 (Fed. Cir. 2008), the Court applied the sovereign act defense to an administrative agency order to meet requirements of the Endangered Species Act. In *Orlando Helicopter Airways, Inc. v. Widnall*, 51 F.3d 258, 262-63 (Fed. Cir. 1995), the Court applied the sovereign act defense to a criminal investigation of the contractor.

The sovereign acts doctrine "is an affirmative defense that is an inherent part of every government contract" on which the government bears the burden. *Id.* at 1371; *APTIM*, 22-1 BCA ¶ 38,127 at 185,218. The government bears the burden of proving that (1) the governmental action was public and general; and (2) the act rendered performance of the contract impossible. *APTIM,* 22-1 BCA ¶ 38,127 at 185,218; *see also Conner Bros.*, 550 F.3d at 1379. In determining whether an act is public and general, we consider if the act: (1) served a general purpose; (2) was specifically directed at nullifying contract rights or relieving the government of its contractual obligations; (3) applied exclusively to the contractor, or more broadly to other parties not in a contractual relationship with the government; and (4) provided an economic advantage to the government. *Conner Bros.*, 550 F.3d at 1372-75; *M.E.S., Inc.*, ASBCA No. 56149 *et al.*, 12-1 BCA ¶ 34,958 at 171,856, *aff'd* 502 F. Appx. 934 (Fed. Cir. 2013) (holding that a change to base access requirements that delays a contractor constructing a facility on that base is a sovereign act); *Garco Const. Inc.*, ASBCA No. 57796, 15-1 BCA ¶ 36,135 at 176,378-79, *aff'd* 856 F.3d 938 (2017). In *M.E.S.,* the contractor sought damages, claiming that the revised base access policy resulted in its employees spending an hour each day gaining access to the installation. The Board found the change in the base access policy was a sovereign act and applied the following criteria:

> With respect to the claimed price adjustment for the delay, we
> have found above that the changed entry procedures were

9

required by the installation Security Forces Squadron and Air Force Instructions. They were of a public and general nature applicable to all contractors at the installation. They were intended to improve the physical security of the installation, were not intended specifically to nullify contract rights, and they provided no economic advantage to the government. . . . We conclude that the changed entry procedures were a sovereign act of the government for which no monetary compensation is due. *See Conner Bros. Constr. Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008).

*M.E.S.*, 12-1 BCA ¶ 34,958 at 171,856.

We apply these same standards to arrive at our decision here. The change to the Ft. Meade access policy was required by the installation, not USACE. The March 11, 2016, notice of the "New Installation Access Procedures" was issued by the Fort Meade Director, Directorate, Plans, Training, Mobilization and Security (finding 7). The changes were public and general in nature and applicable to all visitors to what was a previously open installation (finding 6). The new entry procedures were not directed at nullifying contract rights but were intended to enhance the physical security of the installation and align with U.S. Army standards across military posts worldwide (finding 7). The impact on Meltech's contract rights was incidental to the "broader governmental objective." *M.E.S.*, 12-1 BCA ¶ 34,958 at 171,856. The actions here, while hindering Meltech's performance under the contract, was a public and general act as a sovereign. There was no evidence that the new policy was intended to invalidate contract rights or that it provided an economic advantage to the government. (Findings 7-9) We conclude that the implementation of the "New Installation Access Procedures" effective April 4, 2016, by the Fort Meade Director, Directorate, Plans, Training, Mobilization, and Security, was a sovereign act, and the government is not liable for damages that this decision may have caused. *See Connor Bros. Constr. Co.,* 550 F.3d at 1368.

While a finding that the government acted in its sovereign capacity protects the government from liability for financial claims, under certain circumstances the contractor may be entitled to additional time to perform. *APTIM,* 22-1 BCA ¶ 38,127 at 185,218-19; *Troy Eagle Grp.,* ASBCA No. 56447, 13 BCA ¶ 35,258 at 173,061-62 ("Actions taken by the United States in its sovereign capacity shield the government from liability for financial claims resulting from those acts, although a contractor is allowed additional time to perform.") (citations omitted); *M.E.S.,* 12-1 BCA ¶ 34,958 at 171,856. However, Meltech must show it is entitled to the extra time it seeks. Meltech maintains that, in addition to monetary damages it seeks, the government must grant a time extension. While we agree that Meltech might be entitled to additional time to perform as a result of the sovereign act, it must prove that any delays it suffered were the government's fault.

10

Meltech has the burden of proving that there were government-caused delays, entitling it to an extension of the contract performance period. *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994); *Amos & Andrews Plumbing, Inc.*, ASBCA No. 29142, 86-2 BCA ¶ 18,960 at 95,738; *Atl. Maint. Co.*, ASBCA No. 40454, 96-2 BCA ¶ 28,323, at 141,415; *States Roofing Corp.*, ASBCA No. 54860 *et al.*, 10-1 BCA ¶ 34,356 at 169,661; *Hedgecock Elec., Inc.*, ASBCA No. 56307, 12-2 BCA ¶ 35,086 at 172,314; *CDM Constructors, Inc.*, ASBCA No. 60454 *et al.*, 18-1 BCA ¶ 37,190 at 181,011.

Laying the foundation for the delays associated with its base access claim, Meltech dedicates a single paragraph consisting of five sentences in its post-hearing brief (app. br. at 88). Meltech's terse argument summarily concludes that its delay issues were not reasonably foreseeable, and since it experienced delays, it must be the fault of the government (app. br. at 88). Meltech's lone case citation, *Delhur Indus., Inc. v. United States*, 95 Fed. Cl. 446, 448 (2010), likewise does not support appellant's position. In *Delhur*, the court determined it was not entitled to recover on its claims because the contractor "presented high-level conclusory allegations unsupported by any concrete facts," "did not provide the Court with sufficient evidence to show that its damages were caused by errors in the plans or government direction, and not by [the contractor's] own mistakes," and "has not provided evidence to show that any of its project delays were excusable." *Delhur Indus.,* 95 Fed. Cl. 448-49.

The facts that exist here, demonstrate a similar problem. The new Fort Meade base access procedures were implemented to apply equally to all Army posts worldwide (finding 7). Along with the announcement of the new directive, the Fort Meade Security Director forwarded information that included a pamphlet and "Frequently Asked Questions," providing details on the implementation of the new procedure. Entrants were encouraged to pre-register for long-term passes and were provided details on how to make that request. Telephone numbers were provided to answer specific questions related to the new policy. (Findings 8-9) The USACE Project Engineer responded to Meltech's specific questions on the process and how the USACE would assist (finding 10). The email and pamphlet assisted non-military personnel on how it can obtain visitor passes (findings 7-9). These detailed instructions were provided nearly a month before the new procedures were to take place (finding 7). USACE's Project Manager sent emails to Meltech explaining the security clearance process and required documents and cautioned that reviewing each applicant's package could take a few weeks (finding 10). Whatever bumps in the road that the FMVCC experienced, it worked with visitors to streamline the process and take into account its backlogs. For example, the FMVCC provided applicants form FGGM 191 to submit their badging information, extended badge expiration dates to allow applicants more time to renew their badges - by four months when applicants needed to resubmit their paperwork for failure to provide the correct documents, and issued temporary 30-day badges on the same day when the affected worker's application had yet to be reviewed (findings 11-12, 17-19). We find that these actions show that the FMVCC acted responsibly in the implementation of its

11

new basis access procedures, considered its delays in the badging process and attempted to accommodate visitors accordingly.

On the other hand, the evidence reveals Meltech's numerous failures in following the new procedure set forth by the government for the new base access process. The FMVCC complained that delays in Meltech's badging applications were largely due to it submitting paperwork at the last minute, incomplete paperwork and document submissions, and paperwork that required the FMVCC staff to retype their document on Meltech's behalf. The FMVCC complained to USACE that while the FMVCC processed thousands of applications every month for over a hundred different organizations, it had to delay other applicants to accommodate Meltech's last-minute applications. (Findings 21-22) The FMVCC sent two separate letters to USACE outlining the badging delays complained by Meltech, which appear to be unique to Meltech due to its inability to follow directions (finding 21).

The FMVCC's observations of Meltech's inability to submit paperwork properly are consistent with testimony by Meltech's Senior Project Manager, who testified that subcontractors were denied badges for a variety of reasons, including i) not providing accurate information on their application forms, ii) failing to submit the correct documentation, iii) not submitting documentation timely, and iv) some applications failed the background check or were rejected for issues of character or criminal history (finding 30).

As discussed above, the issue of a change in security measures at military bases, which temporarily limits contractors' access to the base, is not new. *G & S Const., Inc.*, ASBCA No. 28677, 86-1 BCA ¶ 18,740 involved a contract for construction services in connection with the improvements within Minot Air Force Base. Changes to safety policy nationwide by Air Force Headquarters required more extensive security procedures to enter Air Force installations. The new procedures required contractors to provide more extensive documentation. Although the contractor began to immediately comply with the new directives, the contractor experienced significant delays and was not allowed on the base. The delays were found to be attributable to Air Force personnel not timely processing paperwork, not providing direction to non-military personnel on how to proceed, and continually canceling meetings to discuss these issues over a period of six months. During the contractor's "downtime" due to the lack of base access, the contractor diligently worked on other non-base access tasks and documented its delays. The Board determined the Air Force's delays were unreasonable. *G & S Const., Inc.*, 86-1 BCA ¶ 18,740 at 94,299-309.

In contrast to *G & S Construction*, the delays here were attributable to Meltech's actions or inaction; the delays were not the fault of the USACE or the FMVCC. Meltech failed to timely submit its paperwork to the FMVCC, and when it was submitted, it was completed incorrectly. Any delays attributable to the FMVCC were met with

12

accommodations, time extensions, or extending badging expiration dates (findings 12, 17, 19). The FMVCC's policy is to have applications submitted on a streamlined form, with complete color copy documents, within a few weeks, which is reasonable for Fort Meade to ensure the safety and protection of its military personnel and facilities. In *3N Co., Inc.*, ASBCA No. 30620, 85–3 BCA ¶ 18,282 at 91,756-757, one of the contractor's employees was a resident alien and, therefore, denied an escort badge for the restricted area. There, we held that bidders were put on notice of conditions affecting the issuance of escort badges and that the conditions imposed by the government were not unreasonable. Thus, any delays and damages were solely the fault of the contractor.

Moreover, the record is devoid of probative evidence establishing any impact of the badging background checks and base access. Meltech's Daily Reports fail to mention issues associated with badging delays and base access (finding 30). We give little credence to Meltech's contentions and the hearing testimony that its operations were so complex and demanding that its Project Manager could not be bothered with mundane tasks of ensuring its workers submitted the proper documents in a sufficient amount of time to obtain base access and badging or document this purported issues in the Daily Reports (findings 30-31). We find Meltech to be at fault for any delay it might have suffered as a result of the new base access process. In addition, there was no reasonable explanation from Meltech, as to why it was unable to timely submit the necessary documentation on the appropriate form concerning its workers to ensure their availability. Among other things, there has been no showing of when and what specific instances of delay and disruption occurred nor why they could not have been eliminated or adverse impacts reduced by proper planning. (Findings 30-32) Meltech's Senior Project Manager testified that he did not "make[] a habit of noting" in the daily reports that it experienced issues associated with badging delays or base access, made no attempt to separate out which personnel were denied badging and how any badging issues, if any, may have affected the project as it "was the least of my concerns and…I shouldn't have had to been worrying about that. That should have been the Corps of Engineers' issue," and he made no attempt prior to submitting its REA to analyze whether its delays were due to Meltech's own failures to follow the new base access changes. (Findings 30-32) Our findings detail this failure of proof. Meltech has not met its burden of showing that USACE caused or contributed to the delay by the implementation of the new base access security procedures.

For these and other reasons recited in our findings, we conclude that Meltech has not demonstrated that the additional security requirements to obtain access to Fort Meade were unreasonable or whether they caused it to incur any delays or additional costs. To the contrary, the evidence more succinctly demonstrates that any delay caused by the new base access procedure was a result of Meltech's actions or lack thereof. *Compare G & S Const., Inc.*, 86-1 BCA ¶ 18,740; *see generally Lebolo-Watts Constructors 01 JV, LLC*, ASBCA No. 59740, 21-1 BCA ¶ 37,789. We have considered all of Meltech's arguments and we find no path to award them the time it requests.

CONCLUSION

For the foregoing reasons, the appeal is denied.

Dated: January 6, 2026

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61765, Appeal of Meltech Corporation, Inc., rendered in conformance with the Board's Charter.

Dated: January 6, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

14